Good morning, Your Honors. Good morning, Mr. Lamer. You're here from time to time, I should remember, but is it Lamer? Lamer. Yes, I thought so. Very well, welcome. Hopefully I'm not here too often. Occasionally. We remember you. Yes, I've been before, Your Honor, before. As you know, Mark Lamer and I appear for Appellant Bernard Cap Company in this case. In this situation where the board granted summary judgment to the government dismissing a number of Bernard Cap's claims based on the six-year statute limitations in the Contract Disputes Act, we believe that the board erred in dismissing these because these were routine invoices. And as the court knows that the Contract Disputes Act doesn't define the word claim. However, the FAR Disputes Clause does, and it points out that a routine invoice, such as what we're dealing with here, is not a claim unless it's in dispute when submitted. It can become a claim if it's disputed by the government or not acted upon in a reasonable time. It doesn't say in the clause if it's not paid in a timely manner or if it's not paid in accordance with the time set in the contract. It says if it's not paid within a reasonable time. And the board chose to define reasonable time as the time in the Prompt Payment Act, which is, of course, incorporated in the contract as well, that says payments to be made in 30 days. In the board's view, then, the accrual of the claim was day 31. The moment that that invoice became unpaid by one day, the clock started to run on the six-year statute of limitations. And that's where we think the board erred because of the fact that the clause refers to a reasonable time, not the time specified in the contract. This is consistent with this court's holding in Reflectone v. Dalton, 60 Fed 3rd, 1572, at 1576, where it said a non-routine request for payment, such as an equitable adjustment, can be submitted as a claim initially. However, a routine invoice must be disputed before it can be converted to a claim by the contractor. We would also cite to the decision in James M. Ellett Construction Company v. United States, a panel which Your Honor, Judge Bryson, was on, in which the court held that a termination settlement proposal was not a claim when submitted, but could be converted into a claim once an impasse in negotiations arose. Where the board erred, much like the claims court did in Pathman Construction, which we cited in our principal brief, was to take a provision in the clause that's there for the benefit of the contractor, that allows that contractor to take an invoice, if the government doesn't act within a reasonable time, and convert it to a claim, and turn that into a shield for the government, in effect saying that the contractor must proceed with a claim on the very first day that the invoice is laid. There is a certain attractiveness to the board's ruling, because if the contract calls for payment in 30 days, then you could argue 30 days is the reasonable time, and the moment they're a day late, the cause of action accrues and the six-year clock commences. However, as we point out, the clause in the contract doesn't say that it has to be paid. It accrues if it's not paid within the time in the contract. It uses the more general, within a reasonable time. Let me just be a little clear. So what are you saying the trigger is for the six years? Well, obviously the trigger is if the government rejects an invoice. Then you've got a crystal clear trigger. The question is when the government doesn't reject an invoice, but indicates that, well, we're looking into it, we'll sit down with you, let's go over, let's compare accounts, as what's happened here. There was a constant effort to resolve payment issues, payments would come in, and then there'd be some more invoices wouldn't be paid, that it would have to be, in a sense, fact specific. There are some of the cases that we have located since, for example, in Rex Systems Inc. This court held that there had been an impasse in the convenience termination negotiations, so as to require the government to pay CDA interest on the amount agreed to. And citing ELLIT construction, the court noted on that case, Rex Systems was 224 Fed 3rd 1367, and the court put several indicia as to when negotiations reached an impasse. The court noted that things such as fruitless negotiations would indicate an impasse. A subsequent written request by the contractor to the CO for settlement of its claims would indicate an impasse, or a unilateral decision by the contracting officer would indicate an impasse, and that would then tell the contractor that now your cause of action has accrued, and you have the right to submit a claim. Now admittedly, there's no time set anywhere for a termination settlement proposal to be acted on. It's simply do they act on it in a reasonable time. Can I just ask you, and if there's some confidentiality reason that you can't respond, that's fine. Let me know, but what's at stake here in terms of the amount? Because you can still bring certain of the claims under what the court said, because you've got some claims in 2005 and 2006, so that would be okay. And there was payment of some money before, so I just wanted to just for my own edification get some idea about the amount of the contract that we're talking about here. Okay, the total amount of the claims that were brought to the board was approximately $220,000. The dollar value of what was dismissed was about $160,000. What was the total value of the contract in the first instance? Oh, there were four contracts, and they were multi-year contracts, and they involved millions of dollars taken together. In fact, there were more than four contracts involved over this period of time, but literally millions and millions of dollars, which we pointed out in the brief. At one point, the payment office, DFAS, had suggested, look, on one of these contracts, there's $537,000 sitting out there. Why don't you just invoice for it, which my client doesn't want to go to jail, so you don't invoice for money that you're not owed. But our point was is that until DFAS, the payment office, said, look, we're done, we're not going to consider any more efforts at resolution of this, we can't devote any more manpower to it, there was no affirmative indication from the government that invoices were disputed. So what you simply had was the board's view. We have only one of these contracts now before us. Well, that's a good question. The issue here was the board issued one decision and consolidated all four. When we appealed it, we appealed it as one decision. I'm not sure where that leaves you. I thought with respect to some of the contracts, there was still an issue as to how much was within the statute of limitations and how much wasn't. No, what they did on each of the four contracts, the board treated each invoice individually and took all the invoices that were more than six years and 30 days old and threw those out. What I'm saying is that with respect to some of the contracts, there's no final judgment because they rejected some of the claims under those contracts, but not all of them. Yes, I think that's true on three of them. But what we did is after the appeal was filed, obviously protectively we appealed and then dismissed under Board Rule 30 what was remaining there, subject to reinstatement once this appeal is decided. So right now there's nothing pending before the board. Interestingly, the one case the board cited in support of its decision, Oceanic Steamship Company, 218 Court of Claims 87, the old Court of Claims, in that case it stated, A cause of action accrues when all events necessary to fix liability of the government have occurred and a suit for money judgment can be brought. But even in that context, the court used the term wrongfully withheld as to describing a payment. It's that if the government wrongfully withholds a payment, then the cause of action is accrued and the contractor can bring suit. Also, reading just the other day, this past December 3rd, the ASPCA issued its decision in Parsons Global Services, number 56731, 210 Westlaw 5071061, in which it held the contractor had not filed a valid CDA claim. In discussing this routine, non-routine distinction for requests for payment, the board stated on page 14 of the Westlaw, An invoice may only become a claim if disputed or the government unreasonably delays payment, citing reflectome. So if the cause of action accrues immediately upon an invoice being unpaid with one day left, or one day after its due date, then what does the word unreasonably or the word wrongfully add to the discussion? It should simply say that if the government routine invoice can be a claim if the government doesn't make timely payment. There's no reason to say delays unreasonably. There's no reason to say withholds payment wrongfully. It's simply if the payment is not timely. Well, if you apply the unreasonably delays criterion, when would that have happened? Well, at the point when the, and I think I'm cutting into my, at the point when the government said we will not any longer devote our resources to resolving these payment issues. At that point, the contractor's on notice that you have to invoke your disputes rights. As long as the government is continuing to sit with the contractor and resolve payment issues and make payments, then the contractor is not being put on notice that there's a dispute. And that, and I'll save the rest of my time for rebuttal. Oh, well, we'll reserve your time. Mr. Shum. Thank you, Your Honor. May it please the court. As an initial point, footnote one of the board's decisions is page one of the appendix indicates that, excuse me, his appeals were not consolidated. That is, the board issued one decision, but the claims themselves are still separate. There's only one notice of appeal, one filing fee, only one appeals properly before this court. The claim here that the invoices somehow became claims is directly controverted by the definition of a claim found in the FAR, section 2.101 sub B, which states that the submission, a regular invoice, quote, may be converted to a claim by written notice to the converting officer, close quote. There's no evidence here or assertion that these claims were ever converted, excuse me, that the invoices were ever converted to a claim. This reliance upon the idea that invoices in some circumstances might be that takes some affirmative conduct by the contractor, that didn't happen here. Well, what about the partial payment doctrine, which is in the restatement, it's also in the statute as far as government claims are concerned, 2415, Title 28, and there do seem to have been partial payments here, and under the restatement, a partial payment can start the running of the statute of limitations again. So why didn't that happen here? Well, that argument wasn't made, so we haven't addressed it. Well, it was made, I think. Not very fully, but it was made. It's not even clear from the record in terms of when the last payment was made on this contract, so even if that doctrine were accepted here and the government does not concede that, it's not clear from this record when that last payment would have occurred. Well, maybe we need to send it back for that purpose, to see when the last payments were made. Well, that would be an argument that would have been made by a plaintiff at the time before the board, which it didn't make. It didn't introduce before the board when that last payment would have been made sufficient for that doctrine to apply, if that doctrine would apply, which the government does not concede here. You don't think there's a partial payment doctrine in connection with claims against the government? I'm not in a position to take a position regarding that issue, Your Honor, given that it wasn't briefed and it wasn't raised before the board and it wasn't raised before this court. What was raised before this court is when this claim accrued, and the court's resolution of that issue and this court's affirmance of the board's decision rests upon the court's recognition of two related propositions. First of which is that accrual occurred 31 days after the submission of each invoice, and second, simply that this contractor failed to comply with the requirement that a claim be filed within six years of each claim's accrual. First is the time of accrual. There's no real dispute here that this contractor knew everything it needed to know and could have filed a claim 31 days after the submission of each invoice. Indeed, the contractor informed the government numerous times and has wellness representations to this court. We point the court to paragraph 8 of Mr. Weinstein's declaration, Bernard's President, page 74 of the appendix, where Mr. Weinstein represents that BCCI was owed some, quote, $300,000 in past due payments. That's similar to the correspondence he gave to the government at that time attached as Exhibit A to his declaration, where Mr. Weinstein represents that Bernard is owed, quote, past due money on contracts. The next month, January of 2000, Mr. Weinstein writes another correspondence to the government and attaches open accounts, a list of accounts, and represents at the time that noting, quote, the vast majority of these are very, very past due. What about the argument that a claim doesn't accrue until the government has unreasonably delayed the payment of the invoice? That's found in the dispute clause, Your Honor. But again, that's not applicable here because there's no assertion or argument now or anywhere that somehow these invoices became claims. That is, that provision allows a contractor, upon notice to the contracting officer, to convert an invoice into a claim. That's found in the disputes clause. Looking at the definition of a claim, there must be written notice to the contracting officer for that to occur. There's no assertion that that occurred here, and there's nothing in the record to indicate that there was any written notice to the contracting officer that Bernard intended in any manner whatsoever for its claims to somehow, excuse me, for its invoices to somehow be converted into claims. And this is consistent with the FAR's definition of accrual of a claim, 48 CFR 33.201, which provides that a claim accrues, and I quote, the date when all the events that fixed the liability were known or should have been known. Here, that occurred at the same time Bernard was representing to the government in repeated correspondence that all these payments were past due. The government's liability, to the extent the government was liable, was fixed at that time. Bernard simply failed to file a claim. When they gave the government notice that it was past due? No, Your Honor, it was 31 days past submission of the invoice. Yeah, but the FAR doesn't seem to be to answer precisely the question of when the claim accrues. If the claim doesn't accrue until the government has delayed an unreasonable time in paying the invoice, then FAR says that's when the claim accrues. So they say the claim doesn't accrue until the government has delayed an unreasonable amount of time. Why is that wrong? Because of 33.201 entitled accrual, excuse me, which defines, quote, accrual of a claim. As what? As, quote, the date when all events that fixed the liability. That's the, I mean, why couldn't the last event that fixes liability be an unreasonable delay in making payments? Because there didn't need to be an unreasonable delay before filing a claim. Because this contractor could, as it acknowledged in his correspondence to the government, these payments were purportedly past due. The contractor could have and should have filed a claim at that time. It simply failed to do so. And it's also consistent with precedent from this court and its court's predecessor. Your reading, I take it, of the FAR definition is that when all events that fix liability have occurred means that one day before that time the claim could not have been filed because it was not ripe. The, that's essentially what you're saying, as I understand it. In other words, that as soon as, I may be putting words in your mouth, and correct me if this is not a good articulation of your position. But if I understand you, you're saying because the contractor could have sought relief on the 31st day, then the clock begins to run on that day. If he had sought relief on the 29th day, he would have been turned away on the ground that there was no, payment was not due yet. Exactly, Your Honor. It didn't accrue because there was no obligation due. And that's precisely what this court held in Nager Electric. And that's page 852 of that opinion, where this court indicates that the statute of limitations commences, quote, when the contractor could ordinarily demand his money and bring his suit if payment was not made. And that's the 31st day after each invoice was submitted. It's also consistent with Pennsylvania Coal and Coal Company, where this court holds page 140. Ordinarily, a cause of action would accrue when the service was rendered, when the articles were furnished, and the obligation to pay, therefore, arose. As indicated in the contemporaneous correspondence, that obligation arose. To the extent there was any obligation, it arose when they became past due, which was 31 days after the submission of each invoice. Second, then, is simply that this contractor failed to file a claim within six years of each claim having accrued. The claim letter is dated, this is page 325 of the appendix, is dated November 14, 2008. This is over eight and a half years after the contractor made representation to the government that all the claims on the only contracted issue were, in fact, past due. In accordance with the FAR, this is when the claim accrued because the government's liability was fixed. Accordingly, if there are no further questions from the court, we ask that this court affirm the board's decision and dismiss this case. Thank you, Mr. Shaw. And we'll hear rebuttal from Mr. Lamer. And if I could, very briefly, Your Honor, I would address two points. We're not suggesting that somehow these invoices became claims automatically. There's no issue there. That's not an argument. The contractor has to act affirmatively to convert an invoice to a claim. And we agree that that was not done here. You could have done that on the 31st day. What's that? You could have done that on the 31st day. I can't argue with that. Could have done that on the 31st day. And that's where the partial payment comes in and the other things the government did, which would indicate to the contractor that we don't have a dispute here, that we are working together to try to resolve payment issues. And the evidence of partial payments, and we did include printouts showing payments on these contracts as late as 2007. And you'll find that in Mr. Weinstein's declaration. But there's four of them. We did four printouts on the four contracts. And you'll find one of them at page 100101 of the appendix, which shows receipts on two invoices under one of the contracts. I was looking for the contract number. I believe it's the 1017 contract payment of 500 and some dollars on another one of 200 and some dollars on July 19 of 2007. And we did that with each of the four contracts. These are contracts that go back to 1997, 99. And payments were still coming in, dribs and drabs, but payments were still coming in. Effectively, when the contractor would go to the payment office, would say, look, I've got this, we've got this, and then payments would come in. So the question is at what point the contractor should have been on notice that we've got a dispute here. And our contention is that – and let's talk practicalities. Do you want to sue your customer? I mean, that's what you're saying is on day 31, a contractor who's got ongoing contracts, the contracts are still open, he's still shipping, he's still submitting invoices. Do you want to invoke the disputes clause on day 31 with your customer? Or do you continue to try to work with your customer to resolve payments, and then finally when your customer says, look, that's it, this is what – we're not paying any more, we're not devoting any more time to this, then he knows he's got a dispute. And if he wants his money, he's got to go the disputes route. And that's what we're saying is that – Where does this chart show the partial payments? Okay, if you look at page 100, it's a printout of payments, and I think we put an arrow down towards the bottom on page 100 and 101. Which is the column that shows the payments? Oh, the column – let's see, it may count from the right. One, two, three, four, five, six, seven. The seventh column from the right. The obligation amount? Correct. Why does that indicate it's a payment? Because it shows the amount that was being – it's got a voucher number all the way – or contract – yeah, right, contract 1017, and then it's got a voucher number on the right, and that is an indication of a payment of $562.30. Or the obligation there that was being – the payment that was being made. And that's – this is explained in Mr. Weinstein's affidavit on page 76, paragraph 26. Our contention is that the board was required to do something more than a mechanical day 31, your cause of action accrued, you need to bring your claim. There should have been – and, again, a finding in whether the government's delay was unreasonable to put the contractor on notice that it had to invoke its disputes right. And, again, we don't contend that stale claims should be heard. You have a laches defense, and you have the statute of limitations if the government's delay was unreasonable. Thank you. Thank you. We thank both counsel. The case is submitted.